IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| ARTHUR W. KENNEDY, ) | Civil Action No.: 8:13-871-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TECHTRONIC INDUSTRIES NORTH ) | **OPINION AND ORDER** |
| AMERICA, INC.; ONE WORLD ) | |
| TECHNOLOGIES, INC.; and RYOBI ) | |
| TECHNOLOGIES, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 22.) The defendants contend that application of S.C. Code § 15-5-150 bars suit in this Court.

## **BACKGROUND**

The plaintiff commenced this product liability action on April 1, 2013, alleging claims of strict products liability, negligence, breach of implied warranty of fitness, breach of warranty of merchantability, and reckless, willful or malicious conduct. (See generally Compl.) The plaintiff alleges that this suit "arises out of the serious and permanent personal injuries suffered by Plaintiff on or about June 20, 2009," while using a Ryobi table saw. (Compl. ¶ 7.) The plaintiff is a resident of Ohio (Compl. ¶ 1); the subject accident occurred in Ohio (see Pl. Resp. at 2; Pl. Resp. to Defs.' Request for Admission Nos. 1-3); and the plaintiff purchased the subject saw outside of South Carolina (see id. at Request No. 6). Each of the defendants are incorporated in and organized under the laws of the

1

State of Delaware.  (Compl. ¶¶ 2-4.)

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,

655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

The defendants argue that the South Carolina Door Closing Statute ("Statute") bars suit in this Court. *See* S.C. Code § 15-5-150. Specifically, defendants contend that suit here is impermissible under the Statute because the plaintiff is a non-resident suing a resident corporation over events that did not occur in the State of South Carolina. The South Carolina Door Closing Statute states:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in circuit court:
>
> (1) By any resident of this state for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or subject of the action shall be situated within the State.

*Id.* It is well established that a South Carolina federal court exercising diversity jurisdiction "must apply § 15-5-150 'unless there are affirmative countervailing federal considerations.'" *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir. 1980) (quoting *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965)). There is no factual dispute between the

parties that the defendants are domestic corporations; the plaintiff is not a resident of this State; and the underlying factual circumstances occurred elsewhere than in South Carolina. (Compl. ¶¶ 1, 7; Pl. Resp. at 8.)  In other words, the elements of the Statute are agreed to be satisfied.  The plaintiff, however, makes various legal and constitutional challenges to application of the statute in this case.  The Court would address each briefly in turn, even as it declines them.

The plaintiff first contends that the Statute does not apply where "there are countervailing federal considerations."  *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65 (4th Cir. 1985); *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 5463 F. Supp. 2d 544, 549 (D.S.C. 2006) ("It has long been held that federal courts sitting in diversity must apply Section 15-5-150 unless countervailing federal interests preclude its application.").

But, the defendant rightly rejoins that *Szantay* has been almost completely limited, by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum to assert his claims.  *See Rollins*, 634 F.2d at 740 (holding there were no countervailing federal considerations because the plaintiff could have sued in "North Carolina, the state of the Defendant's incorporation."); *Bumgarder v. Kenn Corp.*, 593 F.2d 572, 573 (4th Cir. 1979); *California Buffalo v. Glennon-Brittan Group, Inc.*, 910 F. Supp. 255, 257 (D.S.C. 1996) ("The Fourth Circuit Court of Appeals has since limited the need to apply *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action."); *Collins v. R.J. Reynolds Tobacco Co.*, 901 F. Supp. 1038, 1043 n.2 (D.S.C. 1995) (distinguishing *Szantay* because the plaintiff could have filed suit in other jurisdictions).

Here, the plaintiff admits that he could have brought this action in Ohio (Pl. Resp.

4

at 7; Compl. ¶ 7), both where the accident occurred and where the subject table saw was purchased. And, so any material federal consideration is, therefore, wanting. *See Rollins*, 634 F.2d at 740. Said again, *Rollins* instructs that because the plaintiff could have brought suit in Ohio, other federal considerations like the Full Faith and Credit Clause and the Privileges and Immunities Clause need not be weighed. It should be noted that, while no procedural bar to the plaintiff's ability to file elsewhere has been argued, "a plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction." *Rollins*, 634 F.2d at 740.

The plaintiff emphasizes the purposes of Door Closing Statute, *see Murphy v. Owens-Corning Fiberglas Corp.*, 590 S.E.2d 479, 481 (S.C. 2003), and how they are not served in application of it here.[1] This is the wrong end of the lens, so to speak. The Door Closing Statute need not prove itself anew each time. As stated, it applies barring the presence of some countervailing federal consideration. *See Rollins*, 634 F.2d at 740. In *Murphy*, the South Carolina Supreme Court revisited these underlying policies only in the

---

[1] There are three judicially recognized purposes of the Door Closing Statute:

- It favors resident plaintiffs over nonresident;

- It provides a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest;

- It encourages activity and investment within the state by foreign corporations without subjecting them to actions unrelated to their activity within the state.

*Murphy v. Owens-Corning Fiberglas Corp.*, 590 S.E.2d 479, 481 (S.C. 2003). As a tip of the cap, the undersigned would concede the plaintiff's concerns that the Door Closing Statute purposes imply a kind of antiquated effect that may not be fully acknowledging of the realities of modern business and even litigation practice and efficiencies. But, as will be discussed, its application has been too consistently affirmed by the State of South Carolina and this federal circuit for the undersigned to make some independent pronouncement about it.

context of considering the novel issue of "when a latent disease cause of action 'arises' for purposes of the statute." *Murphy*, 590 S.E.2d at 481.

Because, the plaintiff had forum elsewhere for vindication of his case, the Court, therefore, need not reach the plaintiff's arguments as to whether the Full Faith and Credit Clause or the Privileges and Immunities Clause constitute sufficient countervailing federal considerations. *Id*. The alternative forum is dispositive under *Rollins* and progeny.

The plaintiff, however, repurposes the Privileges and Immunities clause as a stand-alone constitutional challenge to the Statute. But, the Fourth Circuit has already resolved it in the negative – the Statute is not unconstitutional. *See Szantay*, 349 F.2d at 65. It is precisely because the Statute does not violate this constitutional provision that the Fourth Circuit was compelled to include it and the Full Faith and Credit clause, in a subordinate status, as "federal considerations." *Id*.

*Szantay* expressly recognizes that the South Carolina Door Closing statute is not directly violative of either the Full Faith and Credit or the Privileges and Immunities Clauses. First, with respect to the Privileges and Immunities Clause, the Fourth Circuit, in *Szantay*, transitioned, "While such discrimination may not be unconstitutional . . . ." *Id*. And, again, concerning the Full Faith and Credit Clause, the court expressly acknowledged that the "South Carolina 'door-closing' statute does not directly violate the demands of this constitutional principle." *Id*. The use of the words "may" and "not directly" are not somehow qualifying or speculative about the constitutionality of the Statute. Rather, they are phrases of contrast, plainly indicating that even though the Statute could not *actually* be considered unconstitutional, it nevertheless implicates important constitutional concerns – restyled as "federal considerations." If the Statute was in fact violative of those

6

constitutional provisions, then the Court would have simply concluded as much in the first instance. There would be no need to recharacterize existing constitutional constraints as federal interests to be discretionarily considered on a case-by-case basis. Indeed, that is the whole necessity of the *Szantay* balancing test – to still capture for consideration constitutional concerns that are not themselves, in the first instance, fully dispositive of the appropriateness of the Statute.[2]

The Fourth Circuit may disagree that its decision in *Szantay* is so clear; it appears to escape the parties. But, there is a logical implication in language usage, described above, that until undone, persuades the undersigned that there already exists controlling Circuit authority which answers in the negative any question concerning the constitutionality of the Statute in light of the constitutional provision at issue. It is telling that such constitutional challenges essentially appear nowhere else subsequently, either in the state or federal courts of South Carolina, and, that at both levels the statute has been consistently enforced. It is not an issue of novel or first or unresolved impression

---

[2] Admittedly, in rejecting the unconstitutionality of the Statute, the Fourth Circuit does not include any particular analysis, even as it does include case citation. With respect to the Privileges and Immunities Clause the Court would say a little more. That clause protects only those privileges and immunities that are "fundamental." *McBurney v. Young*, 133 S. Ct. 1709, 1714-15 (2013). And, the United States Supreme Court has certainly included "in a partial list of such fundamental privileges 'the right of a citizen of one state . . . to institute and maintain actions of any kind in the courts of' another." *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 560 (1920) (citation omitted). But, the Supreme Court has made clear that "the constitutional requirement is satisfied if the non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens." *Id.* at 562. Modifications in the availability of access are not *per se* unconstitutional, therefore. And, the fact that the non-resident may only bring suit against a domestic corporation in South Carolina when the incident giving arise occurred in that state, a reasonable state interest, coupled with the protection that the plaintiff must be ensured of forum, elsewhere, seems sufficient.

Regardless, of the Court's independent view, the Fourth Circuit has already said that it is.

apparently. The Court, therefore, would be hesitant to reach to reverse an existing constitutional determination where no South Carolina, state or federal, case has ever done so; quite to the contrary there is an historically lengthy standard of affirmation. *See Central R.R. & Banking Co. v. Georgia Construction & Investment Co.*, 11. S.E. 192, 203 (S.C. 1890) ("[I]t is very manifest that the object of [the Door Closing Statute] was, not to so extend the jurisdiction of the courts of this state as to throw open their doors to any person, from any quarter of the globe, to demand redress for injuries received anywhere, but simply to secure the inhabitants of the state, for which the constitution was made, access to the courts for redress of any injury which they may have received.").

The plaintiff would characterize some of his constitutional challenge, "as applied." Notwithstanding the nomenclature, the plaintiff's objection still appears facial in nature. He has not differentiated some application of the statute unique to the particulars of this case that are not already contemplated by the plain and express language of the Statue. The plaintiff's evaluation of the Statute's purposes in light of its application in this case (Pl. Resp. at 18-21) are not considerations that would somehow not always be present. Indeed, the plaintiff, in this tack, continues only to challenge generally the legislative motives of the Statute and whether the purposes serve them. *See id.* The circumstances factually are simply on all fours, so to speak, with the statute. It is a quintessential case not an exceptional one.

The Statute is not unconstitutional, facially or as applied.

## **CONCLUSION**

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary

8

judgment.  (ECF No. 22).  The case is hereby dismissed *without prejudice*.[3]

    IT IS SO ORDERED.

/s/ Bruce Howe Hendricks  
United States District Judge

Greenville, South Carolina  
September 29, 2014

---

[3] The Court declines to make a determination with prejudice concerning the applicability and effect of any statute of limitations.